**FILED**

**May 1, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**No. 17-0971, Chief Justice Walker, Concurring**

I concur with the majority; this Court should affirm the circuit court's order denying Erin Gibbons and Quenton Burner's appeal and affirming the final order of the Martinsburg Police Civil Service Commission. I write separately to clarify my analysis.

Promotions within the City of Martinsburg Police Department are competitive, with candidates scored on a one-hundred point scale. Under Martinsburg Police Civil Service Commission Rule VII, Section 2 (Rule VII), a candidate may earn up to fifty points based upon their performance on a standard, written examination; forty points based upon a review of their personnel file; and ten points for their years of service in the department. Rule VII further subdivides the scoring of a candidate's personnel file. Relevant to Petitioners' appeal, post-secondary education accounts for up to ten points of the possible forty points awarded based on the contents of a candidate's personnel file.

When City of Martinsburg police officers Quenton Burner and Erin Gibbons sought promotion in late 2016, they were passed over in favor of other candidates with more post-secondary education. But for the education points awarded to the successful candidates, Burner and Gibbons would have earned scores high enough for promotion to sergeant and corporal, respectively.

The pair grieved the promotional decisions to the Martinsburg Police Civil Service Commission, challenging the Commission's consideration of post-secondary

education at promotion. In February 2017, the Commission affirmed its rule and denied Petitioners' grievance.

Petitioners then appealed the Commission's order to the Circuit Court of Berkeley County.[1] As they had done before the Commission, Petitioners argued that the Commission's Rule VII violated the Police Civil Service Act, West Virginia Code §§ 8-14-16 to 23 (2017) (the Act). The circuit court denied Petitioners' appeal, reasoning that consideration of an officer's educational background was "not directly inconsistent with the express provisions of the Act which permits consideration of the officer's 'experience.'" So, the circuit court denied Petitioners' appeal and their request for a writ of mandamus.

Petitioners' grievance and appeals—to the Commission, then to the circuit court, and now to this Court—raise a single question of law: whether the Act authorizes the Commission to consider post-secondary education at promotion, so that officer-candidates such as Petitioners may lose promotions they may otherwise deserve to

---

[1] *See* W. Va. Code § 8-14-13a(e) (2017) ("If any applicant is aggrieved by a decision rendered by the commission under this section, such applicant may, within twenty days of the date of the commission's decision, seek judicial review thereof in the circuit court of the county wherein such municipality is located.").

candidates with higher levels of post-secondary education. This Court may reverse the circuit court's order affirming the Commission if it was "based upon a mistake of law."[2]

Petitioners' appeal hinges on West Virginia Code § 8-14-17(b), which states in pertinent part that "[p]romotions shall be based upon experience and by written competitive examinations to be provided by the Policemen's Civil Service Commission[.]" Petitioners offer two arguments in support of their position that the Commission's Rule VII violates that section of the Act. First, that in our prior decision in *Morgan v. City of Wheeling*, we stated that the "[A]ct prescribes the sole provisions for appointing police officers according to *merit and fitness* . . . . It provides all that is necessary for the appointment and promotion of the fittest applications."[3] Because § 8-14-17(b) does not contain the word "education," Petitioners conclude that Rule VII necessarily conflicts with the Act. Second, Petitioners assert that the word "experience" cannot include consideration of an officer-candidate's educational background because we have previously defined it to mean "seniority." [4]

---

[2] Syl. Pt. 3, *Bays v. Police Civil Serv. Comm'n, City of Charleston*, 178 W. Va. 756, 364 S.E.2d 547 (1987) ("'The judgment of a circuit court affirming a final order of a police civil service commission, upon appeal therefrom as provided by statute, will not be reversed by this Court unless the final order of the commission was against the clear preponderance of the evidence or *was based upon a mistake of law*.' Syl. pt. 2, *In re Appeal of Prezkop,* 154 W.Va. 759, 179 S.E.2d 331 (1971).") (emphasis added).

[3] 205 W. Va. 34, 40, 516 S.E.2d 48, 54 (1999).

[4] *See Bays*, 178 W. Va. at 760, 364 S.E.2d at 551.

These arguments require interpretation of the Act, and specifically § 8-14-17(b), to determine the extent of the Commission's authority to include education in its assessment of a candidate's experience at promotion.[5] In a different context, this Court has explained that if a "statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute."[6] Given the Commission's authority and obligation to "prescribe and enforce rules and regulations carrying into effect the civil service provisions of [West Virginia Code Chapter 8, Article 14],"[7] I conclude that that explanation applies equally in this context.

The Act is silent as to the meaning of "experience" in § 8-14-17(b), so the question becomes whether the Commission's answer is based on a permissible construction

---

[5] *Compare id.* at 759, 364 S.E.2d at 550 ("Stated another way, the appellants argue that the PCSC lacks the authority to establish a passing score for written examinations for promotions, so that an applicant who fails the written examination is precluded from further consideration for promotion.").

[6] Syl. pt. 4, in part, *Appalachian Power Co. v. State Tax Dep't of W. Va.*, 195 W. Va. 573, 466 S.E.2d 424 (1995) ("If legislative intent is not clear, a reviewing court may not simply impose its own construction of the statute in reviewing a legislative rule. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.").

[7] W. Va. Code § 8-14-10(1) (2017).

of that statute, that is, one which flows rationally from the statute.[8]  I believe that it is.  As the circuit court reasoned, there is

> [A]mple support for [the Commission's] position that officers with a higher education tend to possess better analytical and decision-making skills, better communication skills, and tend to draft better reports, warrants, etc.  These skills may in turn aid an officer in the overall performance of his or her police work and interactions with the public in general.  The [circuit court] further agree[d] with the [the Commission] that higher education is a legitimate factor in determining the best candidates for promotion to positions where the officer will train and supervise other officers.

For those same reasons, I conclude that the Commission's Rule VII, which considers an officer's educational attainment as part of the overall assessment of his experience under § 8-14-17(b), is based on a permissible construction of that statute.

Petitioners' arguments regarding *Morgan v. City of Wheeling* and this Court's comments in *Bays* miss the proverbial boat.  In *Morgan*, we held that a city's residency requirement did not conflict with the express provisions of the Act, and therefore was permissible.[9]  We reasoned that the Act was primary and exclusive with regard to merit

---

[8] *Appalachian Power Co.*, 195 W. Va. at 588, 466 S.E.2d at 439.

[9] Syl. pt. 2, *Morgan*, 205 W. Va. at 34, 516 S.E. 2d at 48 ("The provisions of the police civil service act, W.Va.Code §§ 8–14–6—24, which provide for the appointment, promotion, reduction, removal and reinstatement of all municipal police officers and other employees of paid police departments of Class I and Class II municipal corporations, are not exclusive. Therefore, a residency requirement applicable to municipal police officers which is enacted by a municipal corporation pursuant to W.Va.Code § 8–5–11 (1969) is valid. The police civil service act, rather, excludes the enactment of only those measures which are inconsistent with the express provisions of the act.").

and fitness considerations, but that a residency requirement was not related to merit and fitness and so could not conflict with the Act. That reasoning does not dictate the conclusion that the Commission's Rule VII conflicts with the Act, and is, therefore, void. The Legislature chose not to define "experience," and the definition adopted by the Commission is neither irrational nor contrary to the aims of the Act. As such, it would be very difficult to conclusively state that Rule VII is "inconsistent with the express provisions of the Act."[10]

*Bays* is not Petitioners' silver bullet, either. There, this Court considered whether the Charleston Police Civil Service Commission had authority under the Act to impose a 90/10 pass rate on written examinations for promotion.[11] We held that it did not because the Commission's rule elevated one promotional consideration—written exam scores—over the others specified in § 8-14-17, essentially reading the other factors (service and experience) out of the statute.[12] In the course of our analysis, we stated in dicta that a

---

[10] *Id.*

[11] *Bays*, 178 W. Va. at 757, 364 S.E.2d at 548 ("That is, the top ninety percent of those taking the examination would receive passing scores and the bottom ten percent would fail.")

[12] Syl. pt. 2, *id.* at 756, 364 S.E.2d at 547 ("The Police Civil Service Act, in particular, *W.Va.Code,* 8–14–17, as amended, requires that the promotions of individuals thereunder are to be based upon merit and fitness to be ascertained by competitive written examination and upon the superior qualifications of the individuals promoted, as shown by their previous service and experience. One of these test factors, in itself, is not an adequate determinant of the applicant's merit and fitness; therefore, it should not be considered to

prior version of § 8-14-17 (1969, 1986) "requires promotions under the [Act] to be based upon merit and fitness as shown by (1) competitive written examination, (2) service, i.e., performance appraisal and (3) experience, i.e., seniority."[13] Again, that statement was dicta; as such, I do not read it to preclude the Commission's reasonable interpretation of the term, "experience," in the amended version of § 8-14-17(b) (2012, 2017).

I recognize that "a municipality's powers are strictly construed[.]"[14] The Commission, however, is authorized by statute to "prescribe and enforce rules and regulations carrying into effect the civil service provisions of [West Virginia Code Chapter 8, Article 14]"[15] Thus, I believe it is proper to assess the legality of the Commission's Rule VII in the context of that statutory authority and the Legislature's decision not to define the term, "experience," found in § 8-14-17(b). Based on that analysis, I concur with the majority that the circuit court's final order denying petitioners' appeal and affirming the final order of the Commission must be affirmed.

---

the exclusion of the others. Accordingly, regulations of a police civil service commission which conflict with the statute on this point are void.").

[13] *Id*. at 760, 364 S.E.2d at 551.

[14] *Id*. (citing Syl. pt. 2*, State ex rel. City of Charleston v. Hutchison*, 154 W. Va. 585, 176 S.E.2d 691 (1971)).

[15] W. Va. Code § 8-14-10(1).

7